UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | | |
|---|---|---|
| JOHN CURRY, | | |
| | Plaintiff, | 3:15-cv-00244-LRH-WGC |
| v. | | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | | |
| | Defendant. | |

Before the court is the Report and Recommendation of U.S. Magistrate Judge William G. Cobb (ECF No. 23), recommending granting plaintiff John Curry's motion for reversal and/or remand (ECF No. 12) and denying the cross-motion to affirm (ECF No. 18) submitted by defendant, the acting Commissioner of Social Security ("the Commissioner").[1] The Commissioner filed an objection to the Report and Recommendation (ECF No. 26), to which Curry responded (ECF No. 27).

The court will overrule in part and sustain in part the objections to the Report and Recommendation, which found that, based on Dr. J Antonio Aldrete's diagnosis, Curry meets Listing 1.04(B) and is therefore disabled and that this case should be remanded for benefits. The court finds that the Administrative Law Judge ("ALJ") erred by not discussing Dr. Aldrete's diagnosis of nerve-root compression and arachnoiditis and by summarily according his opinion "little weight" despite the fact that he is an arachnoiditis specialist. But because there are

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill will be substituted for Carolyn W. Colvin as the Acting Commissioner of Social Security.

conflicting diagnoses present in the record and unresolved issues, remanding for an award of benefits is improper and the case will instead be remanded for further proceedings. Finally, the court has reviewed Curry's two other bases for remand, which were not addressed in the Report and Recommendation, and finds that only the issue of the Vocational Expert's testimony also merits remand.

**I.     Background**

Curry was injured on January 9, 2009, during the course of his employment as a sheet-metal worker. Administrative Record ("AR")[2] at 48, 309. While mounting a forklift, he "bumped" his head, causing him to fall off the forklift, strike his head, and lose consciousness. *Id*. Curry has not been employed since that accident. AR at 48. He claims that, as a result of the accident, he suffers from constant, severe pain that prevents him from sitting or standing for more than twenty minutes at a time and impairs his ability to walk and his concentration. *See* AR at 53–57.

On March 8, 2012, Curry filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning on January 9, 2009. AR at 186–89. The application was denied initially and on reconsideration. AR 114–19, 121–26. Plaintiff requested review before an ALJ. AR at 128–30. On July 9, 2014, Plaintiff appeared, represented by counsel, and testified on his own behalf before ALJ Eileen Burlison. AR at 43–69. Testimony was also taken from a vocational expert ("VE"). AR at 63–68. On August 14, 2014, the ALJ issued a decision finding Plaintiff not disabled. AR at 21–36. Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. AR at 1–6, 16–17.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). The action was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(l)B and Local Rule 1B 1–4 of the Rules of Practice of the United States District Court for the District of Nevada.

///

---

[2] The Commissioner manually filed the Administrative Record with this court. ECF No. 8.

## II. Legal standards

### A. Reports and Recommendations

This court conducts a *de novo* review "of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

### B. Judicial review of the Commissioner's final decision

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 523–24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Id.* at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

Nonetheless, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

///

## III. Discussion

Curry argues that there are three separate reasons this case should be remanded: (1) the ALJ erred in finding that he did not meet Listing 1.04 for Disorders of the Spine; (2) the ALJ failed to resolve the conflict between the VE's testimony and the *Dictionary of Occupational Titles* and its companion publications concerning the sit-stand option; and (3) the ALJ failed to include limitations based on Plaintiff's post-concussion headaches in the RFC, and as such failed to include the required function-by-function assessment. ECF No. 12.

The Report and Recommendation found that Curry meets Listing 1.04 and that his case should be remanded for benefits. ECF No. 23 at 12. Therefore, the Report and Recommendation did not address Curry's remaining arguments. *Id.* Because this court finds that the case must be remanded for further proceedings, it will also address these other arguments. But in order to place these issues in context, the court will first describe the five-step evaluation process for disability.

### A. Five-step disability evaluation

Federal regulations require an ALJ to engage in the following five-step process in order to determine whether a claimant is disabled:

> First, the ALJ must determine: (1) whether the claimant did not perform substantial gainful activity during the period of claimed disability, [20 C.F.R.] § 416.920(a)(4)(i); (2) whether the claimant had an impairment, or a combination of impairments that is "severe," *id*. § 416.920(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," *id*. § 416.920(c); and (3) whether any severe impairment meets or equals the severity of one of the impairments listed in an appendix to the regulations, as well as meeting the duration requirement, *id*. § 416.920(d)-(e); 20 C.F.R. pt. 404, subpt. P, App. 1. **If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits**. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed in the appendix, the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC) based on all the relevant evidence in the record, including impairments not classified as "severe." *Id*. § 416.920(a)(4)(iv); *id*. § 416.920(e); *id*. § 416.945(a). The RFC is defined as "the most" the claimant can do, despite any limitations. *Id*. § 416.945(a). After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work. *Id*. § 416.920(a)(4)(iv). If not, then at step five, the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *see also Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

*Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015) (emphasis added).

4

### B. Listed Impairment 1.04

Curry's first argument, which became the Report and Recommendation's focus, addresses step three of the disability analysis. He contends that his medical impairments meet Listed Impairment 1.04 ("Listing 1.04") regarding spinal disorders and that he is therefore legally disabled and entitled to benefits. The court will first address how the ALJ erred during her step-three analysis and then address why remanding for further proceedings is the proper remedy.

#### 1. The ALJ erred in failing to properly address and weigh Dr. Aldrete's diagnosis of nerve-root compression and arachnoiditis

Listing 1.04 involves "[d]isorders of the spine (e.g., herniated nucleus pulposus, **spinal arachnoiditis**, **spinal stenosis**, osteoarthritis, **degenerative disc disease**, facet arthritis, vertebral fracture), resulting in **compromise of a nerve root** (including the cauda equina). 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.04 (emphasis added). The listing also enumerates three medical impairments, and a claimant must satisfy the requirements of at least one of these impairments in order to meet the listing and thus be automatically considered disabled. The listed impairment at issue in this case is subpart B, "spinal arachnoiditis,"[3] which must be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *Id.* § 1.04(B).

In her findings of fact, the ALJ determined that Curry suffers from, among other "severe impairments," "cervical disc disease with mild central canal stenosis at C5-6 and C6-7 . . . ." AR at 23. In turn, there does not appear to be a dispute that Curry suffers from a disorder of the spine; rather, the issue before the ALJ was (1) whether his condition resulted in a compromise of a nerve root and (2) whether he suffered from arachnoiditis and its required symptoms.

---

[3] Spinal arachnoiditis "describes a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord." *Arachnoiditis Information Page*, THE NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, https://www.ninds.nih.gov/Disorders/All-Disorders/Arachnoiditis-Information-Page, (last visited April 4, 2017).

5

Ultimately, the ALJ held that Curry's "impairment(s) did not meet the criteria of listing 1.04 . . . because he did not have compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis <u>resulting in pseudoclaudiciation</u>." AR at 24–25 (emphasis in original).

While this conclusion was the full extent of the ALJ's analysis under step three, she proceeded to detail Curry's history of post-accident medical exams and results ordered and conducted by various physicians during her step-four RFC analysis. AR at 25–32. The Report and Recommendation adeptly summarized these results, highlighting the fact that none of these various physicians diagnosed Curry with arachnoiditis or the required "burning pain" and resulting need to frequently change positions.[4] ECF No. 23 at 10.

However, Curry has argued throughout his briefings that he was diagnosed with the requisite Listing 1.04(B) impairments by Dr. Aldrete, an arachnoiditis specialist who purports to be the only physician in the world who has written two textbooks on the disorder based on over 20 years of research and the treatment of hundreds of arachnoiditis patients. AR at 556. Because Dr. Aldrete conducted an "independent medical review" of Curry's test results and did not treat or personally examine Curry, it is undisputed that he is considered a "reviewing physician." Dr. Aldrete reviewed several of Curry's post-accident MRIs[5] and a "limited number of his medical records." AR at 555.

Specifically, Dr. Aldrete reviewed a February 2, 2009 MRI of Curry's cervical spine and a November 19, 2010 MRI of his lumbar spine. Dr. Aldrete concluded that the former MRI revealed that Curry's "C1 vertebra appears to compress the right nerve root of C1" and that, "[o]n the right lateral pathway of C1, the right nerve root also appears to be slightly compressed." AR at 556. He further noted that a protruding disc at the C5-6 level was impinging

---

[4] It also does not appear that any of the treating or examining physicians diagnosed Curry with compression of a nerve root. The November 2010 MRI of Curry's lumbar spine did reveal that his stenosis resulted in his "L5 nerve" appearing to be entrapped. AR at 28. But based on the ALJ's discussion, the L5 nerve does not appear to be a nerve root. *See id*. If this is incorrect, this point should be addressed on remand.

[5] Dr. Aldrete noted that he is not a radiologist and that his "review of radiological images is limited to" arachnoiditis. AR at 556.

on the anterior aspect of the spinal cord and that there was an apparent lesion at the C6 level that appeared to have healed "in situ" that seemed "to have resulted in a narrowing of the vertebral canal, plus demonstrating direct contact with the spinal cord, most likely substantially limiting the patient's motion." AR at 557. And upon reviewing Curry's 2010 lumbar-spine MRI, Dr. Aldrete concluded that "the nerve roots appear to have evidence of long term inflammation" and that "some nerve roots on the posterior of the dural sac appear to be enhanced and clumped." AR at 557.

Ultimately, Dr. Aldrete diagnosed Curry with (1) adhesive arachnoiditis; (2) degenerative disc disease of the cervical, thoracic, and lumbar spine; and (3) neuropathic pain. AR at 558. He then concluded his review with an extensive discussion of his arachnoiditis diagnosis and, among other things, its relation to the condition of Curry's nerve roots. AR at 559–64.

During her step-four analysis, the ALJ noted Dr. Aldrete's diagnosis and his recommendations for how Curry could address his arachnoiditis (e.g., continue medication management and perform aquatic therapy). She then concluded that Dr. Aldrete's "recommendations . . . are accorded little weight because [he] did not have the benefit of examining the claimant or reviewing a complete record." AR at 31. This is the full extent of her discussion regarding Dr. Aldrete's diagnosis of nerve-root compression and arachnoiditis.

After reviewing the record, the Report and Recommendation found that the ALJ erred in discounting Dr. Aldrete's arachnoiditis diagnosis, emphasizing the fact that "the ALJ gave Dr. Aldrete's *recommendations* little weight, [but] included no discussion concerning Dr. Aldrete's *diagnosis* of arachnoiditis." ECF No. 23 at 11 (emphasis in original). The Report and Recommendation then ultimately concluded that Curry met his burden of establishing that he met Listing 1.04(B) based on (1) Dr. Aldrete's diagnosis, (2) Curry's numerous documented reports of burning pain, along with evidence of dysesthesia, and (3) testimony from Curry and other witnesses that he could not sit or stand for more than 20 minutes at a time. *Id*. at 11–12. It thus appears that the Report and Recommendation is implicitly placing dispositive weight on Aldrete's diagnosis. But as discussed in the next section, the conflicting medical evidence and other outstanding issues do not allow the court to decide whether Curry meets Listing 1.04(B).

Nonetheless, the court agrees with the Report and Recommendation that the ALJ erred in summarily discounting Dr. Aldrete's diagnosis and will expand on that analysis. In her objection to the Report and Recommendation, the Commissioner argued that substantial evidence supports the ALJ's decision to reject Dr. Aldrete's diagnosis because "[n]one of the physicians that actually examined [Curry] diagnosed him with arachnoiditis." ECF No. 26 at 8. While the ALJ might have concluded that the evidence that Curry did *not* have nerve-root compression or suffer from arachnoiditis outweighed Dr. Aldrete's contrary diagnosis, she committed legal error by assigning "little weight" to his conclusion based on the fact that he did not personally examine Curry and did not review a complete medical record.

Turning to the ALJ's first rationale, it would normally be proper for an ALJ to assign less weight to the diagnosis of a treating physician such as Dr. Aldrete than to the diagnosis of a claimant's treating or examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) ("Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician."); 20 C.F.R. § 404.1527(c). However, the fact that the federal regulations governing Social Security disability proceedings direct an ALJ to grant *less* weight to a reviewing physician's opinion does not necessitate that the ALJ automatically grant the opinion "little weight."

Most importantly, the ALJ does *not* acknowledge anywhere in her decision that Dr. Aldrete is an arachnoiditis specialist and that the same federal regulations direct ALJs "to give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Therefore, the ALJ was required to weigh the fact that Dr. Aldrete was a reviewing physician against the fact that he was a specialist in the very disorder that would result in Curry meeting Listing 1.04(B) and qualifying for benefits. As this case demonstrates, the rationale behind the additional weight the regulations place on a specialist's medical opinion is apparent; after years of receiving no conclusive explanation for what was causing his pain (*see*

AR at 555), Curry consulted with a specialist who diagnosed him with a particular disorder that was purportedly causing his symptoms.

Moreover, the fact that Dr. Aldrete was a reviewing physician—rather than an examining physician—appears to have even less relevance in the context of Listing 1.04(B), which allows for arachnoiditis to be diagnosed by "appropriate medically acceptable imaging." It therefore appears to this court that, in this context, there is no relevance to whether the physician reviewing a claimant's MRI is a treating, examining, or reviewing physician.

The use of medically acceptable imaging also undercuts the ALJ's second rationale for according Dr. Aldrete's opinion "little weight": the fact that Dr. Aldrete did not review Curry's complete medical record. If the MRIs that Dr. Aldrete reviewed allowed him to conclude, based on his specialization, that Curry suffers from arachnoiditis and a compromised nerve root, then it is unclear what effect or relevance Curry's other medical information would have on this specific diagnosis.

The ambiguity underlying whether the ALJ considered the issues discussed above demonstrates that she also erred in including only a conclusory finding at step three that Curry does not meet Listing 1.04. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."). In concluding that Curry did not meet all of the listing's requirements, the ALJ was required to grant Dr. Aldrete's diagnosis proper weight and sufficiently discuss why she discounted it.

Thus, because this court finds that there was legal error in the ALJ's decision, the court will remand the case.

### 2. Remanding *for further proceedings* is the proper remedy

As discussed above, the Report and Recommendation found that the proper remedy for this case would be to remand for an award of benefits. When a district court determines that an ALJ committed legal error, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc., Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014). Moreover, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez*, 808 F.3d at 407. Specifically, the court "must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In conducting this review, the district court must consider whether there are 'inconsistencies between [the claimant's] testimony and the medical evidence in the record,' or whether the government has pointed to evidence in the record 'that the ALJ overlooked' and explained 'how that evidence casts into serious doubt' the claimant's claim to be disabled." *Id.* (alternation in original) (internal citations omitted). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Id.*

Here, the court finds that the proper remedy in this case is to remand it for further proceedings. It is evident from the record that there is conflicting medical evidence as to whether Curry does suffer from nerve-root compression and arachnoiditis. While the court agreed with Curry that the ALJ erred in assigning Dr. Aldrete's diagnosis little weight despite his arachnoiditis specialization and other relevant circumstances, Curry has not cited—nor has the court discovered—any authority that would make this diagnosis dispositive to the step-three analysis when no other physician diagnosed Curry with either nerve-root compression or arachnoiditis. Moreover, it is unclear to this court whether Dr. Aldrete's arachnoiditis specialization impacts his ability to also diagnose nerve-root compression, a required condition under Listing 1.04; after all, Dr. Aldrete noted that he is not a radiologist and that his review was limited to arachnoiditis. *See supra* n.5.

Additionally, because the ALJ summarily found that Curry did not meet Listing 1.04, she did not address the credibility of Curry's reports of burning pain or dysesthesia, which appear in some of his medical reports as self-descriptions of his pain and are required under subpart B. ECF No. 12 at 23 (citing AR at 314, 326, 410). And although the ALJ does address Curry's need to variate between sitting and standing in the context of her analysis under steps four and five,

1  she did make a specific finding regarding the other subpart B requirement: needing to change
2  position or posture more than once every two hours.
3        Based on these points, it is evident that further administrative proceedings would serve an
4  important role. The court will therefore remand for such proceedings. On remand, the ALJ
5  should properly weigh and discuss all of the evidence regarding whether Curry suffers from
6  nerve-root compression and arachnoiditis, including Dr. Aldrete's opinion as an arachnoiditis
7  specialist, and make specific findings as to the required symptoms under subpart B in order to
8  determine whether Curry meets Listed Impairment 1.04 and is thus disabled.

      **C.      The sit-stand limitation is a conflict that also warrants remand**

10        Curry next argues that the ALJ erred by failing to resolve a conflict between the
11  Vocational Expert's testimony and the *Dictionary of Occupational Titles* ("DOT"). *See Massachi
12  v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (stating that, under Social Security Ruling 00-4p,
13  an ALJ "has an affirmative responsibility to ask about any possible conflict between . . .
14  [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational
15  Titles*]."). Specifically, the ALJ, in questioning the VE about the type and amount of jobs that
16  Curry would be capable of performing based on his impairments, added the limitation that the
17  worker would be able to variate between sitting and standing (i.e., a sit-stand option). AR at 66.
18  Because this limitation does not appear in the DOT (*see* AR at 35), Curry contends that the
19  limitation represents an unresolved conflict. The Commissioner responds that district courts
20  within this circuit are divided as to whether limitations not addressed by the DOT constitute a
21  conflict and argues that a VE's testimony on such issues supplement rather than conflict with the
22  DOT. ECF No. 19 at 6–7.
23        This court has already decided this issue in an earlier case in which it accepted and
24  adopted a Report and Recommendation that thoroughly discussed this issue and held that "there
25  is an apparent conflict presented by VE testimony regarding jobs that will allow for a sit-stand
26  option when the DOT does not address a sit-stand option." *McCabe v. Colvin*, No. 3:14-CV-
27  00396-LRH-WGC, 2015 WL 4740509, at *12 (D. Nev. Aug. 10, 2015). The court finds that the

Commissioner's arguments are nearly identical to those the court rejected in *McCabe*, and it therefore finds no reason to deviate from this holding.

Therefore, the only issue is whether the ALJ's error is harmless. Most courts addressing this precise issue often cite to the Ninth Circuit's unpublished disposition in *Buckner-Larkin v. Astrue*, 450 F. App'x 626 (9th Cir. 2011). There, the claimant argued that the ALJ, by including a sit-stand option in her hypothetical to the VE, improperly considered vocational evidence because it conflicted with the [DOT] and the conflict was not identified or resolved." *Buckner-Larkin*, 450 F. App'x at 628. While the court acknowledged that the absence of a sit-stand option in the DOT was a conflict, it held that the VE "addressed and explained" the conflict by noting the absence and informing the ALJ that "his determination was based on his own labor market surveys, experience, and research." *Id*. In contrast, the VE in *McCabe* "did not specifically discuss whether her identification of the job as allowing a sit-stand option was based on her own surveys, experience or research . . . ." *McCabe*, 2015 WL 4740509, at *12. This court therefore accepted and adopted the conclusion that, because the court could not determine whether the ALJ's reliance on the VE's testimony was based on substantial evidence, the error warranted remand. *Id*. at *12–13.

Like *McCabe*, the ALJ in the instant case did not address with the VE the basis of his conclusion that the jobs in question allow for a sit-stand option. Instead, the ALJ surmised in her decision that the VE's conclusions were based on his "professional experience." AR at 35. However, this boilerplate statement could be attributed to any Vocational Expert's testimony, and the court therefore finds that it does not satisfy the ALJ's "affirmative responsibility to ask about any possible conflict between . . . [vocational expert] . . . evidence and information provided in the [DOT]." *Massachi*, 486 F.3d at 1152.

Finally, the court addresses the Commissioner's final argument that any error that occurred is harmless because the VE testified that the availability of only one of the possible jobs that he identified would be eroded by the added sit-stand option and that there were still jobs available to Curry in significant numbers in the national economy. ECF No. 19 at 9. But this issue speaks to the very point the court addressed in *McCabe*; because the ALJ did not inquire

about the conflict and how the VE arrived at his conclusion regarding the effect of a sit-stand limitation, the court cannot assess whether the ALJ's decision is based on substantial evidence.

The court will therefore also remand the case for further proceedings regarding this segment of the disability analysis and instructs the ALJ to address with the VE the fact that the DOT does not include a sit-stand option. If, however, the ALJ finds that Curry meets Listing 1.04 and is thus disabled, the inquiry ends and this point would be moot and would not require any further proceedings.

### D. Remand is not warranted regarding Curry's post-concussion headaches

Based on the "severe impairments" that the ALJ concluded that Curry suffers from, she determined that he "had the residual functional capacity to perform sedentary work . . . with an option to alternate between sitting and standing." AR at 25. One of the severe impairments that the ALJ identified is "post-concussion headaches." AR at 23. Curry argues that the ALJ erred during the step-four analysis by failing to account for this condition in assessing Curry's residual functional capacity. ECF No. 12 at 27. The Commissioner responds that Curry has not identified any "concrete limitations" that he believes his headaches would have on his RFC and, because no such limitations exist, the ALJ properly constructed his RFC. ECF No. 19 at 10. Curry has not replied directly to this argument. ECF No. 22 at 6.

The court finds that no error has occurred because Curry has failed to indicate any evidence in the record that the ALJ failed to address or properly weigh regarding how Curry's headaches would affect his RFC. This issue will therefore not be remanded for further proceedings.

## IV. Conclusion

IT IS THEREFORE ORDERED that the Commissioner's objections to the Report and Recommendation (ECF No. 26) are **SUSTAINED in part** and **OVERRULED in part** in accordance with this order.

IT IS FURTHER ORDERED that plaintiff John Curry's motion for reversal and/or remand (ECF No. 12) will be **GRANTED in part** in accordance with this order.

///

IT IS FURTHER ORDERED that the Commissioner's cross motion to affirm (ECF No. 18) is **DENIED**.

IT IS FURTHER ORDERED that this case will be immediately **REMANDED to the ALJ for FURTHER PROCEEDINGS** in accordance with this order regarding Listed Impairment 1.04 and the Vocational Expert's testimony.

IT IS FURTHER ORDERED that, upon remand, the ALJ shall adjudicate this case as quickly as possible and without delay.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Acting Commissioner of Social Security.

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment and close this case.

IT IS SO ORDERED.

DATED this 17th day of April, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE